# UNITED STATES DISTRICT COURT
for the
Western District of Washington

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Extended Stay America – Seattle - Everett – Silverlake, 1431 112th St SE, Room #225, Everett, Washington, as more fully described in Attachment A.

Case No.   MJ19-577

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Extended Stay America – Seattle - Everett – Silverlake, 1431 112th St SE, Room #225, Everett, Washington, as more fully described in Attachment A, incorporated herein by reference.

located in the ____Western____ District of ____Washington____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) & 846 | Distribution and possession with intent to distribute controlled substances, and conspiracy to commit same |
| 21 U.S.C. § 952(a) | Importation of controlled substances |
| 18 U.S.C. § 1956 & 1956)(h) | Money laundering and conspiracy to commit same |

The application is based on these facts:
✓ See Affidavit of DEA SA Kevin Palermo continued on the attached sheet.

☑ Delayed notice of ____ days (give exact ending date if more than 30 days: 02/29/2020) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Pursuant to Fed. R. Crim. P. 4.1, this warrant is presented: ☑ by reliable electronic means; or: ☐ telephonically recorded.

_____
*Applicant's signature*

Kevin Palermo, Special Agent
*Printed name and title*

○ The foregoing affidavit was sworn to before me and signed in my presence, or
◉ The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date:   12/1/19

_____
*Judge's signature*

City and state:   Seattle, Washington       Michelle Peterson, United States Magistrate Judge
*Printed name and title*

# AFFIDAVIT OF KEVIN PALERMO

STATE OF WASHINGTON  )
                     )  ss
COUNTY OF KING       )

I, KEVIN PALERMO, a Special Agent with the Drug Enforcement Administration, Seattle, Washington, having been duly sworn, state as follows:

## AFFIANT BACKGROUND

1. I am employed as a Special Agent (SA) with the United States Drug Enforcement Administration (DEA), and have been so employed since August 2016. I am currently assigned to the Seattle Field Division. In this capacity, I investigate violations of the Controlled Substance Act, Title 21, United States Code, Section 801 et seq., and related offenses. I have received specialized training in the enforcement and investigation of the Controlled Substance Act. I have received over 620 hours of classroom training including, but not limited to, drug identification, drug interdiction, detection, money laundering techniques and schemes, smuggling, and the investigation of individuals and/or organizations involved in the illegal possession, possession for sale, sales, importation, smuggling, cultivation, manufacturing, and illicit trafficking of controlled substances. Prior to becoming a Special Agent with the DEA, I was employed as a Police Officer in the Village of Lincolnshire in Lake County, Illinois, from December 2014 to August 2016. In that capacity, I was responsible for providing and promoting public safety in the Village of Lincolnshire and the State of Illinois by maintaining order, responding to emergencies, protecting people and property, and enforcing criminal and motor vehicle laws. During this time, I was involved in investigations of criminal offenses including, but not limited to, narcotics, identity theft, burglary, fraud, DUI, theft, and domestic violence.

2. In my role as a Special Agent for the Drug Enforcement Administration. I have participated in narcotics investigations (i.e. heroin, cocaine, marijuana, and methamphetamine) which have resulted in the arrest of individuals and the seizure of

Affidavit of SA Palermo - 1
USAO201900179

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

illicit narcotics and/or narcotic-related evidence and the forfeiture of narcotics related assets. I have been involved in the service of search warrants as part of these investigations. Because of my experience in serving these search warrants, I have encountered and have become familiar with various tools, methods, trends, paraphernalia and related articles utilized by various traffickers in their efforts to import, conceal, and distribute controlled substances. I am also familiar with the various methods of packaging, delivering, transferring, and laundering drug proceeds. Additionally, through my training and experience, I can identify illegal drugs by sight, odor, and texture.

3. I have also worked on drug investigations involving the use of court-authorized wiretaps under Title III. In that capacity, I have had the opportunity to monitor, listen to, and review transcripts and line sheets (prepared by linguists) documenting the content of hundreds of intercepted conversations involving the trafficking of cocaine, methamphetamine, heroin, and other narcotics, by persons who used some form of code to thwart law enforcement. I have also interviewed defendants at the time of their arrest and have debriefed, spoken with, and/or interviewed numerous drug dealers or confidential sources (informants) at proffer and safety valve interviews who were experienced in speaking in coded conversation over the telephone. In many of these interviews and debriefings, I was able to speak with these drug traffickers about specific conversations in which they were intercepted pursuant to electronic surveillance. From these interviews, and also from discussions with other experienced Agents, I have gained knowledge regarding the various methods, techniques, codes, and/or jargon used by drug traffickers in the course of their criminal activities, including their use of firearms to protect their narcotics related activities and of cellular telephones, other electronic means to facilitate communications while avoiding law enforcement scrutiny.

4. I have written affidavits in support of court authorized federal warrants and orders in the Western District of Washington for GPS tracking of telephones, search warrants, and tracking of vehicles. Additionally, I have testified in grand jury proceedings, written investigative reports, and conducted and participated in numerous interviews of drug traffickers of various roles within drug organizations, which has

Affidavit of SA Palermo - 2
USAO201900179

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

provided me with a greater understanding of the methods by which drug trafficking organizations operate.

## PURPOSE OF AFFIDAVIT

5. This application seeks permission to search the following location, which is more particularly described in Attachment A, attached hereto and incorporated by this reference as if set forth fully herein. As summarized herein, this location is believed to be utilized by one or more participants in the crimes described herein, and there is probable cause to believe evidence of those crimes will be found at these locations:

   a. **Extended Stay America – Seattle - Everett – Silverlake, 1431 112th St SE, Room #225 , Everett, Washington:** Hereinafter referred to as the "**target location**." Investigators believe the **target location** is utilized by Bryan Pollestad.

6. I believe the **target location is** presently being used in the Western District of Washington in furtherance of the following federal criminal offenses: Distribution of Controlled Substances, in violation of 21 U.S.C. § 841(a) (1), and/or conspiracy to commit that same offense in violation of 21 U.S.C. § 846.

7. I have obtained the facts set forth in this affidavit through my personal participation in the investigation described below; from oral and written reports of other law enforcement officers; and from records, documents and other evidence obtained during this investigation. I have obtained and read official reports prepared by law enforcement officers participating in this investigation and in other investigations by the DEA. When I refer to registration records for vehicles, I am relying on records obtained from the Washington State DOL. Insofar as I have included event times in this affidavit, those event times are approximate.

8. Since this affidavit is being submitted for the limited purpose of obtaining authority to search the **target location**, I have not included every fact known concerning this investigation. I have set forth only the facts that I believe are essential for a fair determination of probable cause that the target subject(s) are involved in drug trafficking, and the **target location** is being used to facilitate that drug trafficking.

Affidavit of SA Palermo - 3
USAO201900179

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## SOURCES OF INFORMATION

9. I have obtained the facts set forth in this affidavit through my personal participation in the investigation described below; from oral and written reports of other law enforcement officers; and from records, documents and other evidence obtained during this investigation. I have obtained and read official reports prepared by law enforcement officers participating in this investigation and in other investigations by the DEA. Insofar as I have included event times in this affidavit, those event times are approximate.

## SUMMARY OF INVESTIGATION

### Jimenez-Hernandez Trans-National Criminal Organization

10. Beginning in December 2018, DEA, Snohomish Regional Drug Task Force (SRDTF), Skagit County Drug Task Force (SCDTF), and Seattle Police Department Narcotics (SPD) began investigating a drug trafficking organization (DTO) operating within the Western District of Washington. Through the use of confidential source information and traditional investigative techniques, agents[1] identified several individuals, including Christian JIMENEZ-HERNANDEZ, Martin Esteban QUINONEZ-LUQUE, Gonzalo VILLASENOR, Jocelyn LEYVA-CASTELLANOS, and Julio Cesar RAMIREZ-MENESES, involved in the distribution of methamphetamine, heroin, and counterfeit oxycodone, commonly referred to as M30s.

### Authorization to Intercept Wire and Electronic Communications

11. On October 15, 2019, the Honorable James L. Robart, United States District Judge for the Western District of Washington, signed an Order authorizing interception of wire and electronic communications of 425-345-8051 ("TT3") used by Gonzalo VILLASENOR, 425-410-6962 ("TT4") used by Gonzalo VILLASENOR, and

---

[1] When I use the term "agents" throughout the affidavit I am referring to law enforcement personnel, to include, but not limited to DEA and FBI agents and task force officers; Seattle Police Department sergeants, detectives and officers; and Snohomish Regional Drug and Gang Task Force detectives, and other officers and agents associated with this investigation.

Affidavit of SA Palermo - 4
USAO201900179

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

206-578-9119 ("TT6") used by Julio Cesar RAMIREZ-MENESES. In doing so, Judge Robart found probable cause to believe that TT3, TT4, and TT6 were being used to further drug trafficking and related offenses. Interception pursuant to that order began that day and ended November 13, 2019, and has strengthened investigators' belief that VILLASENOR, RAMIREZ-MENESES, and their associates are distributing narcotics in the Western Washington area.

12. On October 21, 2019, the Honorable Mary Alice Theiler, United States Magistrate Judge for the Western District of Washington, signed an order authorizing real-time GPS tracking and court authorization for the installation and monitoring of a pen register and trap and trace device for three target telephones, TT11[2] (360-202-5932), TT12 (206-661-7401), and TT13 (425-528-4845).

13. On October 22, 2019, the Honorable Mary Alice Theiler, United States Magistrate Judge for the Western District of Washington, signed an order authorizing real-time GPS tracking and court authorization for the installation and monitoring of a pen register and trap and trace device for three target telephones, TT7 (425-443-4979), TT10 (206-574-8656), and TT14 (360-722-2984).

14. On October 29, 2019, the Honorable Mary Alice Theiler, United States Magistrate Judge for the Western District of Washington, signed an order authorizing real-time GPS tracking and court authorization for the installation and monitoring of a pen register and trap and trace device for three target telephones, TT15 (425-948-9793), TT16 (541-730-0001), and TT17 (206-460-9015).

15. On October 31, 2019, the Honorable Paula McCandlis, United States Magistrate Judge for the Western District of Washington, signed an order authorizing real-time GPS tracking and court authorization for the installation and monitoring of a pen register and trap and trace device for three target telephones, TT18 (325-921-0597), TT19 (206-581-5661), and TT20 (425-791-6612).

---

[2] On October 24, 2019, the phone provider for TT11 advised agents that the phone number of 360-202-5932 changed to 206-669-4690 but the IMSI for the phone device remained the same; therefore, agents were able to continue receiving GPS tracking and pen register and trap and trace data on TT11 under the existing court order.

Affidavit of SA Palermo - 5
USAO201900179

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Case 2:19-mj-00577-MLP   Document 1   Filed 12/01/19   Page 7 of 19

16.    On November 6, 2019, the Honorable Michelle Peterson, United States Magistrate Judge for the Western District of Washington, signed an order authorizing real-time GPS tracking and court authorization for the installation and monitoring of a pen register and trap and trace device for three target telephones, TT21 (425-499-5560), TT22 (206-929-8323), and TT23, (206-353-2038).

17.    On November 22, 2019, the Honorable Ricardo S. Martinez, United States District Judge for the Western District of Washington, signed an Order authorizing the continued interception of wire and electronic communications of 425-345-8051 (TT3) used by Gonzalo VILLASENOR, 425-410-6962 (TT4) used by Gonzalo VILLASENOR; the initial interception of wire and electronic communications of 206-460-9015 used by Bryan POLLESTAD (TT17), 206-929-8323 used by Manuel PANTOJA (TT22), and 206-970-2993 used by Bryan POLLESTAD (TT24)[3]; and the initial interception of wire communications only of 541-730-0001 used by Jesus DE LEON. In doing so, Judge Martinez found probable cause to believe that TT3, TT4, TT17, TT22, TT24, and TT16 were being used to further drug trafficking and related offenses. Interception pursuant to that order began that day and is ongoing, and has strengthened investigators' belief that VILLASENOR, RAMIREZ-MENESES, and their associates are distributing narcotics in the Western Washington area.

**PROBABLE CAUSE FOR SEARCH WARRANT**

18.    During the course of the interception period, POLLESTAD using TT24, has been intercepted stating he is staying at an Extended Stay, which I believe is the **target location**, on seven separate occasions (sessions 741, 768, 771, 824, 839, 1056, 1076). One such example, on November 29, 2019, POLLESTAD received a call from a female using telephone 425-484-0503. During the call the female asked POLLESTAD for "brown" [heroin] and "some extra clear" [methamphetamine] POLLESTAD directed

---

[3] On November 26, 2019, agents obtained a revised wiretap Order from Judge Martinez to correct the area code of TT24 from 206-970-2993 to 425-970-2993.

Affidavit of SA Palermo - 6
USAO201900179

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  the female to go to the Extended Stay. I believe POLLESTAD was directing the female
2  to meet him at the Extended Stay Hotel to conduct a narcotics transaction.
3        19.   During two occasions POLLESTAD directed individuals to a specific
4  room. On November 29, 2019, POLLESTAD received a phone call on TT24 from 425-
5  626-0651, used by an individual who identified themselves as "Joe" (session 839). The
6  following is a transcription of the telephone conversation.

| | | |
|---|---|---|
| 7 | POLLESTAD: | Hello. |
| 8 | JOE: | Hello. |
| 9 | POLLESTAD: | Who's this? |
| 10 | JOE: | This is Joe |
| 11 | POLLESTAD: | What's up, Joe? How you doing? |
| 12 | JOE: | Not too bad. How you doing? |
| 13 | POLLESTAD: | Good. Is everything alright? |
| 14 | JOE: | Yeah, yeah, yeah. It's all good. I just needed to see ya. |
| 15 | POLLESTAD: | You need to see me? |
| 16 | JOE: | Yeah. |
| 17 | POLLESTAD: | For, for what? |
| 18-19 | JOE: | Uh, some clear and some dark. [methamphetamine and heroin] |
| 20-22 | POLLESTAD: | Okay, uh, gimme, uh… I'm at the one, twelfth (112th) Extended Stay. [POLLESTAD is at the extended stay off 112th] |
| 23-24 | JOE: | One, twelfth (112th) Extended Stay. Uhm, okay, the one off [U/I]? |
| 25-26 | POLLESTAD: | Mmhmm. So, um, [Pause] I'll have to call and [U/I] a ride unless you want to shoot out here. |
| 27 | JOE: | I can shoot that way. |
| 28 | POLLESTAD: | Alright, sounds good, Joe:. I'll see you in a minute. |
| | JOE: | Alright, what number? [what room number] |

Affidavit of SA Palermo - 7
USAO201900179

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| | | |
|---|---|---|
| 1 | POLLESTAD: | Uh, two (2), twenty (20), uh, two (2), twenty-five (25). [room 225] Aside: Right babe? Yeah. Two (2), twenty-five (25). [Room 225] |
| 4 | JOE: | Two (2), twenty five (25), all right. [U/I] [Room 225] |
| 5 | POLLESTAD: | [U/I] |
| 6 | JOE: | All right. |

20. During this telephone call I believe "Joe" contacted POLLESTAD to order methamphetamine and heroin. To complete the narcotics transaction POLLESTAD directed "Joe" to see him at the Extended Stay located off of 112th. POLLESTAD then provided "Joe" room number 225 for the room to see him in.

21. On November 30, 2019, POLLESTAD received a phone call on TT24 from 206-612-6604, used by an individual who himself as "Kevin" (session 1056). During the phone call "Kevin" stated he had money for POLLESTAD. POLLESTAD directed "Kevin" to the "Extended Stay on 112th" and told "Kevin to park in the back". Kevin said he had 400 plus another 400 for POLLESTAD. The parties discussed timing of when Kevin would arrive and conversation ended shortly thereafter.

22. On November 30, 2019, POLLESTAD received a phone call on TT24 from 206-612-6604, used by an individual who POLLESTAD identified as "Kevin" (session 1075). The following is a transcription of the telephone conversation.

| | | |
|---|---|---|
| POLLESTAD: | Hello. Kevin! |
| KEVIN: | Hey. I'm back here right now. |
| POLLESTAD: | All right, cool. Uhm, just, uh, you can… (Aside: Huh?) |
| KEVIN: | I'm back here in like the north, on the north side. |
| POLLESTAD: | Okay. You can come… |
| KEVIN: | [U/I] people in the parking lot. |
| POLLESTAD: | Okay, y-, you don't want to chill there if there's hella people there. |

Affidavit of SA Palermo - 8
USAO201900179

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| | | |
|---|---|---|
| 1 | KEVIN: | Okay, you, I'm, Imma go to the, the, backside on the |
| 2 | | south door. |
| 3 | POLLESTAD: | Uhh, the back side? |
| 4 | KEVIN: | Yeah, I'm on the back side, I'm, there's like, there's |
| 5 | | three (3) doors. There's fuckin' the front doors and |
| 6 | | there's one (1) on the north end, and one (1) on the |
| 7 | | south end. |
| 9 | POLLESTAD: | Right. You're gonna go to the north end door? |
| 10 | KEVIN: | I'm at the north end door right now. There's quite a |
| 11 | | few people out here. |
| 12 | POLLESTAD: | Right, right. But, I would just walk and go up to two |
| 13 | | (2), twenty-five (25). [Room 225] |
| 15 | KEVIN: | Go to, to [PH] two (2), twenty-five (25)? [Room 225] |
| 16 | POLLESTAD: | Yeah, just walk in the front. |
| 17 | KEVIN: | All right. I'll be right there. |
| 18 | POLLESTAD: | All right. |

23. Furthermore, GPS data for TT24 has indicated the telephone was in the immediate vicinity of the Extended Stay located at **1431 112th St SE, Everett, Washington** on a consistent basis since November 29. Based on the foregoing phone calls, and GPS location data, I believe the **target location** has been and is still being utilized POLLESTAD or other unknown co-conspirators in furtherance of narcotic related activity, and that evidence of the offenses can be located at this location.

24. On November 30, 2019, agents intercepted a telephone call from TT24, used by POLLESTAD to 425-529-3287 used by an unidentified male (session 1215). During the phone call POLLESTAD said he needed five pounds of "clear" [methamphetamine] and 25 pieces of dark [heroin] package. UM said okay. POLLESTAD asked if UM had both of those. UM said not the dark [heroin], only

Affidavit of SA Palermo - 9
USAO201900179

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  "water."[ methamphetamine] POLLESTAD asked what happened to all the dark [heroin].
2  UM said they were on the way, maybe two more days. POLLESTAD asked if UM had
3  any "dark" [heroin]. UM said he (UM) had 10 pieces [10 ounces], not the same, different.
4  POLLESTAD asked if they (10 pieces of dark) were okay. UM said it was good.
5  POLLESTAD said he would take the 10 then. UM said okay, and asked if 10 pieces (of
6  dark), five "water," and 500 blue [oxycodone/counterfeit oxycodone]. POLLESTAD said
7  yeah, and told UM he had just pulled into the Seven Eleven. POLLESTAD asked if UM
8  wanted him (BRYAN) to stay there. UM said he would be on the way, and needed five
9  maybe ten minutes. BRYAN said thank you.  Later that same evening POLLESTAD and
10 the user of 425-529-3287 spoke (session 1235). The UM stated he would was at the seven
11 11 in a white Chevy S10.

25. Later that same evening surveillance was established at the seven eleven, upon their arrival units observed a white Chevy in the parking lot. Moments late agents observed a dark colored vehicle, later identified as a black Mercedes, park near the Chevy. A male exited the Chevy and enter black Mercedes. The male remained in the black Mercedes for a short period of time then returned to the Chevy. Both vehicles departed. The black Mercedes traveled throughout the area, stopping at a gas station and other areas. As the black Mercedes GPS location data for TT24 was in the immediate vicinity of where surveillance agents observed the vehicle. Additionally agents intercepted communications over TT24 where POLLESTAD was speaking to other individuals.

26. Agents followed the black Mercedes as it travel back to the at Extended Stay hotel at **1431 112th St SE, Everett, Washington.** Once the black Mercedes arrived at the Extended Stay parking lot, agents requested marked police units to attempt a traffic stop on the vehicle. As units attempted to stop the vehicle it attempted to flee, striking the patrol vehicles and the occupants fled on foot. POLLESTAD was believed to be the driver of the vehicle at the time they attempted to stop it and was taken into custody.

27. I believe POLLESTAD obtained narcotics and was returning to the **Target location** to stash the recently obtained narcotics. Furthermore, I believe  POLLESTAD

Affidavit of SA Palermo - 10
USAO201900179

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

has other narcotics from previous transactions, or evidence of such crimes, located in the target location. I believe the **target location** has been and is still being utilized POLLESTAD or other unknown co-conspirators in furtherance of narcotic related activity, and that evidence of the offenses can be located at this location.

## KNOWLEDGE BASED ON TRAINING AND EXPERIENCE

28. Based on my training and experience, and my discussions with other experienced officers and agents involved in drug investigations, I know the following:

   a. During the execution of search warrants, it is common to find papers, letters, billings, documents, and other writings that show ownership, dominion, and control of vehicles, residences, and/or storage units.

   b. It is common for drug dealers to secrete contraband, proceeds of drug sales, and records of drug transactions in secure locations within their vehicles, residences, and/or storage units for their ready access and to conceal them from law enforcement.

   c. Narcotics traffickers maintain books, records, receipts, notes, ledgers, airline tickets, money orders, and other papers relating to the transportation, ordering, sale, and distribution of controlled substances. Narcotics traffickers commonly "front," that is, provide on consignment, controlled substances to their clients. These books, records, receipts, notes, and ledgers, commonly known as "pay and owe sheets," are maintained where traffickers have ready access to them.

   d. Traffickers of controlled substances, and those who assist them, maintain and tend to retain accounts or records of their drug trafficking activities, including lists of drug quantities and money owed, telephone records including contact names and numbers, photographs, and similar records of evidentiary value. These items are generally kept in locations where drug traffickers believe their property is secure and will remain undetected from law enforcement, such as inside their homes and vehicles. Sometimes, these locations are not their primary residence, but instead used for the purposes of storing and distributing drugs.

Affidavit of SA Palermo - 11
USAO201900179

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

e.   Traffickers of controlled substances commonly maintain records reflecting names or nicknames, addresses, vehicles, and/or telephone numbers of their suppliers, customers and associates in the trafficking organization.  Traffickers commonly maintain this information in books or papers as well as in cellular telephones and other electronic devices.  Traffickers often maintain cellular telephones for ready access to their clientele and to maintain their ongoing narcotics business.  Traffickers frequently change their cellular telephone numbers to avoid detection by law enforcement, and it is common for traffickers to use more than one cellular telephone at any one time.

f.   Traffickers maintain evidence of their criminal activity at locations that are convenient to them, including their residences and vehicles.  This evidence often includes more than contraband and paraphernalia and includes financial records, records of property and vehicle ownership, records of property rented, records of storage facilities used to hide drugs or currency, and other documentary evidence relating to commission of, and proceeds from, their crimes.  Narcotics traffickers sometimes take or cause to be taken photographs and/or video recordings of themselves, their associates, their property, and their illegal product, or have photo or video security systems that record images from their homes or property.  These individuals usually maintain these photographs and recordings in their possession or at their premises, in a safe place.  Such evidence may be kept at a safe location for a long time after the drug deal(s) to which they pertain are completed, if the location remains under the control of the trafficker.

g.   Traffickers frequently maintain items necessary for weighing, packaging and cutting drugs for distribution.  This paraphernalia often includes, but is not limited to, scales, plastic bags and other packaging materials, sifters, containers, and cutting/diluting agents and items to mask the odor of narcotics.  Persons trafficking and using controlled substances frequently sell more than one type of controlled substance at any one time.

Affidavit of SA Palermo - 12
USAO201900179

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

h.   It is common for drug dealers to also be users of their product, and it is common for drug users to maintain paraphernalia associated with the use of controlled substances, such as syringes, pipes, spoons, containers, straws, and razor blades.

i.   Traffickers frequently maintain records, books, notes, ledgers, travel documents, and other papers relating to the transportation and distribution of controlled substances in locations convenient to them, such as their residences and vehicles.

j.   Traffickers often maintain weapons, including firearms and ammunition, in secure locations such as their residences and vehicles, in order to protect their drugs and drug proceeds.

k.   Traffickers often have false identification documents and identification documents in the names of others.  Traffickers very often place assets in names other than their own, or use fictitious names and identification, to avoid detection of these assets by government agencies, while continuing to use these assets and exercise dominion and control over them.

l.   Drug trafficking is a cash business, often involving large amounts of cash at any one time, so drug traffickers often have money counters.

m.   Persons involved in drug trafficking conceal in their residences caches of drugs, large amounts of currency, financial instructions, precious metals, jewelry, and other items of value and/or proceeds of drug transactions as well as evidence of financial transactions relating to obtaining, transferring, secreting, or the spending of large sums of money made from engaging in narcotics trafficking activities.

o.   Unexplained wealth is probative evidence of crimes motivated by greed, in particular, trafficking in controlled substances.

p.   Illegal drug trafficking is a continuing activity over months and even years.  Illegal drug traffickers will repeatedly obtain and distribute controlled substances on a somewhat regular basis, much as any distributor of a legitimate commodity would purchase stock for sale, and, similarly, drug traffickers will have an "inventory," which fluctuates in size depending upon various factors, including the demand and supply for the product.  I would expect the trafficker to keep records of his illegal activities for a

Affidavit of SA Palermo - 13
USAO201900179

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

period of time extending beyond the time during which he actually possesses illegal controlled substances, in order that he can maintain contact with his criminal associates for future drug transactions, and so that he can have records of prior transactions for which, for example, he might still be owed money, or might owe someone else money. These records are often created in code

      q.    Drug trafficking is a cash business, and in order to escape notice from authorities for using unexplained income, or hide excessive cash from illegal activities, traffickers either keep large quantities of cash at home or other secure locations, such as safe deposit boxes, or convert the cash into other valuable assets, such as jewelry, precious metals, monetary instruments, or other negotiable forms of wealth. Records of such conversions are often stored where a trafficker lives or in other secure locations such as safe deposit boxes.

      r.    Money launderers often have banking records to include but not limited to, deposit or withdrawal slips, bank statements, checks, or money orders. Some of these banking records may not be in their own name. Money launderers often have several accounts documented in some form, or instructions detailing how to handle each respective account. For example, they may have a list of accounts belonging to several different people with instructions for how much to deposit or withdraw from each and often maintain this information for long periods of time in their residences or safe deposit boxes.

      s.    Money launderers often have records or evidence related to how the proceeds were spent or concealed and often maintain this information for long periods of time in their residences or safe deposit boxes. Evidence may include jewelry and/or vehicles, as well as the contents of storage lockers, safe deposit boxes or bank accounts. The use of bank accounts is a common money movement technique used by drug traffickers to receive payment for narcotics from customers outside of their geographic region. It is common for a trafficker to use several bank accounts for this purpose simultaneously in an attempt to avoid detection by the financial institutions and/or law enforcement. The use of multiple accounts, and the commingling of illicit funds with

Affidavit of SA Palermo - 14
USAO201900179

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

legitimate funds in particular, is often part of the plan to conceal the illegal activity or may be part of the overall integration mechanism by which the illicit funds are made to appear as part of the legitimate income so that only a small portion of or even none of the funds from an account are seized.

28. Based on my training and experience, and that of those around me, I also know that drug dealers use cellular telephones as a tool or instrumentality in committing their criminal activity, to include laundering their proceeds. They use them to maintain contact with their suppliers, distributors, and customers. They prefer cellular telephones because, first, they can be purchased without the location and personal information that land lines require. Second, they can be easily carried to permit the user maximum flexibility in meeting associates, avoiding police surveillance, and traveling to obtain or distribute drugs. Third, they can be passed between members of a drug conspiracy to allow substitution when one member leaves the area temporarily. Since cellular phone use became widespread, every drug dealer I have contacted has used one or more cellular telephones for his or her drug business. I also know that it is common for drug traffickers to retain in their possession phones that they previously used, but have discontinued actively using, for their drug trafficking business. These items may be kept for months and months in a safe place controlled by the drug trafficker. Based on my training and experience, the data maintained in a cellular telephone used by a drug dealer is evidence of a crime or crimes. This includes the following:

a. The assigned number to the cellular telephone (known as the mobile directory number or MDN), and the identifying telephone serial number (Electronic Serial Number, or ESN), (Mobile Identification Number, or MIN), (International Mobile Subscriber Identity, or IMSI), or (International Mobile Equipment Identity, or IMEI) are important evidence because they reveal the service provider, allow us to obtain subscriber information, and uniquely identify the telephone. This information can be used to obtain toll records, to identify contacts by this telephone with other cellular telephones used by co-conspirators, to identify other telephones used by the same subscriber or purchased as part of a package, and to confirm if the telephone was contacted by a cooperating source.

Affidavit of SA Palermo - 15
USAO201900179

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

  b. The stored list of recent received, missed, and sent calls is important evidence. It identifies telephones recently in contact with the telephone user. This is valuable information in a drug investigation because it will identify telephones used by other members of the organization, such as suppliers, distributors and customers, and it confirms the date and time of contacts. If the user is under surveillance, it identifies what number he called during or around the time of a drug transaction or surveilled meeting. Even if a contact involves a telephone user not part of the conspiracy, the information is helpful (and thus is evidence) because it leads to friends and associates of the user who can identify the user, help locate the user, and provide information about the user. Identifying a defendant's law-abiding friends is often just as useful as identifying his drug-trafficking associates.

  c. Stored text messages are important evidence, similar to stored numbers. Agents can identify both drug associates, and friends of the user who likely have helpful information about the user, his location, and his activities.

  d. Drug traffickers increasingly use applications on smart phones that encrypt communications such as WhatsApp, or applications that automatically delete messages, such as Snapchat, in order to avoid law enforcement monitoring or recording of communications regarding drug trafficking and/or money laundering. Evidence of the use of such applications can be obtained from smart phones, and is evidence of a smart phone user's efforts to avoid law enforcement detection.

  e. Photographs on a cellular telephone are evidence because they help identify the user, either through his or her own picture, or through pictures of friends, family, and associates that can identify the user. Pictures also identify associates likely to be members of the drug trafficking organization. Some drug dealers photograph groups of associates, sometimes posing with weapons and showing identifiable gang signs. Also, digital photos often have embedded "geocode" or GPS information embedded in them. Geocode information is typically the longitude and latitude where the photo was taken. Showing where the photo was taken can have evidentiary value. This location

Affidavit of SA Palermo - 16
USAO201900179

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

information is helpful because, for example, it can show where coconspirators meet, where they travel, and where assets might be located

   f. Stored address records are important evidence because they show the user's close associates and family members, and they contain names and nicknames connected to phone numbers that can be used to identify suspects.

## CONCLUSION

29. For the reasons set forth above, I respectfully submit there is probable cause to believe that evidence of the crime of Distribution of Controlled Substances and/or Conspiracy to Distribute Controlled Substances, as described in Attachment B, will be found in the **target location**, further described in Attachment A, and ask that a warrant be issued to search the **target location** for said evidence.

## REQUEST FOR SEALING AND DELAYED NOTICE

30. These applications are part of a long-term, multi-jurisdiction investigation into the criminal activities of the entire Jimenez-Hernandez Trans-National Criminal Organization. Based upon my knowledge, training, and experience, it is my belief that the information contained in this affidavit, if prematurely disclosed to the public, could result in the targets' flight from prosecution, destruction of or tampering with evidence, intimidation or retaliation against potential witnesses, and could otherwise seriously jeopardize the ongoing investigation. Therefore, I request that this affidavit be sealed, and that notice required by Fed. R. Crim. P. 41(f) be delayed for up to ninety (90) days after execution of the search warrant, in accordance with Title 18, United States Code 3103a(b). If necessary, I may request that the Court, upon a showing of good cause, order a further adjournment of the time permitted to serve notice, if necessary to protect the safety of any individual, avoid flight or destruction of evidence, and ensure that the investigation is not jeopardized prior to its completion.

31. For the same reasons, I specifically request permission is sought to conduct the search of the **target location** covertly, pursuant to 18 U.S.C. § 3103a(b) and (c), with delayed notice of the search for a period of at least ninety (90) days. The warrant

Affidavit of SA Palermo - 17
USAO201900179

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

should permit agents to search, inspect, and document, including photographing and/or photocopying, evidence of drug trafficking found in the vehicle described in Attachment A, incorporated herein.

KEVIN PALERMO
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me this \_1\_ day of ~~November~~ December, 2019.

MICHELLE L. PETERSON
United States Magistrate Judge